# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 19, 1906.

SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE ET AL.

VS.

JOHN S. GITTINGS, ETC.

*Arthur W. Machen* and *Arthur W. Machen, Jr.*, for plaintiffs.

*Bernard Carter and Julian J. Alexander* for defendants.

NILES, J.—

This is a demurrer to the bill of complaint. The bill and the exhibits made a part thereof show the following facts existing when the bill was filed, which seem to me relevant to the determination of the question now before me.

In the year 1902, Mrs. Anne M. Winter died, leaving a will, by certain provisions of which she exercised a power of disposition given to her by the will of her father over property left by him in trust for her benefit for life, and subject to her power of testamentary disposition, and by other provisions of the same will she devised and bequeathed what she calls "all my real and personal estate" to certain legatees and devisees, but made no provision whatever for her husband.

In the exercise of her power under her father's will Mrs. Winter directed and appointed the trustees for the time being under her father's will to stand seized and possessed of this "trust property" in trust for or for the benefit of "certain of her descendants."

The said trustees for the time being under her father's will are the Mercantile Trust Company and David Stewart.

In May, 1903, Mr. Winter, surviving his wife and renouncing the will, made claim in the Orphans' Court for Howard county to an husband's "thirds" of the personalty of his deceased wife.

Beside the property actually in possession of Mrs. Winter at the time of decease, there was a claim against her husband for certain money, which claim was denied by him, but which, being prosecuted by her executors, resulted in a determination of the Court of Appeals that $29,000, with certain interest, was due and owing the estate of Mrs. Winter, subject and according to the provisions of a certain contract between herself and husband. After paying this money to the executors of Mrs. Winter the executors of her husband (he having also died) filed a petition in the Orphans' Court for Howard County, claiming "thirds" in this sum also.

These petitions in the Orphans' Court for Howard county were answered by Mrs. Winter's executor, who maintained three positions (a) that Mr. Winter was not entitled to his "thirds" in any of the property (b) that he was not entitled to "thirds" in so much of the said property as consisted of "investments made of the increase of her separate estate" given to her by the will of her father, and that the great bulk of her personal property did consist of such investments, (c) that he was not entitled to "thirds" in the $29,000 paid by Mr. Winter's executors in accordance with the decision of the Court of Appeals above mentioned.

The Orphans' Court for Howard county sustained the broadest position of Mrs. Winter's executors and dismissed the petitions, thereby denying the right of Mr. Winter to "thirds" in any part of his wife's property.

The Court of Appeals, however, reversed this action of the Orphans' Court for Howard county, and held

(a) that Mr. Winter was entitled to "thirds" in "the personal property whereof his wife died, seized and possessed in her own right (b) that as to "the estate which Mrs. Winter received under her father's will" her "power of appointment was exercised by her will * * * so the property derived from the trust estate is also free from the husband's claim," (c) that the sum of $29,000 aforesaid was at the death of Mrs. Winter to go to her heirs by the terms of the contract, and therefore "is no part of Mrs. Winter's estate."

The Court of Appeals then remanded the case for further proceedings in accordance with their opinion.

The opinion of the Court of Appeals was filed June 14th, 1906, and, on the 28th day of June, of the same year, the bill was filed in this case, in the Circuit Court of Baltimore city, the residence of Mrs. Winter's executor being in said city.

This bill, in addition to the facts already stated, further sets out that Mrs. Winter's executor has returned an inventory of her personal estate, showing property and cash, after payment of debts and expenses, to the value of about $60,000; and that he has filed an account, wherein one-third of the property shown in that inventory is reserved to answer the claim of Mr. Winter for his "thirds."

The bill charges that all the cash and securities mentioned in that inventory form property whereof Mrs. Winter died possessed in her own right, but that her executor refuses to admit this, and contends "that some part of said property was not her property at the time of her death, nor the increment of such property."

To this bill the defendants have demurred.

It is evident that the real dispute is in regard to this question, viz: How much of the funds now in the hands of Mrs. Winter's executor shall be considered as personal property whereof she died seized and possessed in her own right, and how much is property "derived" from the trust estate of her father within the meaning of that word as used by the Court of Appeals.

The ground of the demurrer is that, reduced to its last analysis, the whole point involved in the case is a determination of what is to be distributed in the estate of Mrs. Winter, or in other words, what is the quantum of her estate; and the argument is that the Orphans' Court, under our statutes, has as full and plenary power to determine this question as the equity court; that the plaintiffs in this bill have already gone into the Orphans' Court for Howard county, seeking exactly the same relief for all practical intents and purposes as they are seeking here, and that, under these circumstances, this becomes a case for the application of the ordinary rule, that where two courts have concurrent jurisdiction over a cause of action, and can grant the same relief, the one to which application is first made takes exclusive jurisdiction, and will not be interfered with by the other.

The argument is a very strong one, but, to my mind, not convincing.

Upon a consideration of the facts and of the authorities cited and elucidated in most enlightening arguments by the eminent counsel in the case, it is my opinion:

First. That in Maryland, the Orphans' Court has full jurisdiction over such a matter as this, and could have fully protected Mrs. Winter's executor should he have made distribution in that court.

Second. That the jurisdiction of the Orphans' Court over this matter does not take away the jurisdiction of a court of equity.

Third. That a court of equity has the power to take unto itself the administration of any decedent's estate, but that our Maryland courts have, themselves, laid down as a rule for their own government, that they will not take such administration out of the Orphans' Court unless some reasonable ground in the way of "special circumstances" is shown, on account of which it appears to the court that the Orphans' Court cannot deal with the administration as fully and satisfactorily as a court of equity.

Fourth. That the reasoning running through the Maryland decisions, taken as a whole—being in general, that the estate of deceased persons should ordinarily be administered and finally distributed in the Orphans' Court—requires the application of the same rule, whether it be an executor, creditor, legatee or distributee that seeks the interposition of the chancery court. In

each case "special circumstances" must be shown.

Fifth. That in this case, the special circumstances shown are sufficient to justify the interference of a court of equity. There is a certain fund of which confessedly the decedent died possessed. The claim is, however, made that a large part of that fund consists of investments and income derived from the trust estate of her father, which investments are still so far subject to the provisions of the will creating the trust estate as not to be the absolute property of the decedent dying possessed of them, and not to be subject to her plenary power of disposition, but only to her power of appointment as designated by the said will.

The tribunal which settles this controversy must first determine whether any part of the property now in the hands of the executor of the decedent is subject to the provisions of her father's will to the extent claimed; and second, if it should decide the question just stated in the affirmative, it must then take up each investment and determine whether it is included in such property.

If this be so, it seems plain that the Orphans' Court is not fitted to such full and adequate relief as to justify a court of equity in refusing to take jurisdiction of the matter at the request of a distributee.

Sixth. That inasmuch as the Court of Appeals seems to say that the property derived from the trust estate was covered by the power of appointment "exercised by Mrs. Winter's will of September 30, 1898," the legal title, at least, to that property is vested, by virtue of that will, in the trustees of Mrs. Winter's father, who are to "stand seized and possessed" of it for certain purposes, and would hold it by a claim paramount to that of either the executor or the husband. Consequently I think them proper parties to a bill in equity such as this, which seeks a final distribution of the fund, and if they are proper parties, that fact emphasizes the reasonableness of going into equity for settlement.

Seventh. That if the settlement of an estate involves such questions as will induce a court of equity, upon application, to take jurisdiction over it, in cases where the Orphans' Court has a so-called concurrent jurisdiction, the court will take upon itself such administration and remove the estate from the Orphans' Court, no matter at what stage, short or final settlement, the proceedings may be in the Orphans' Court.

I do not see why the rule should be any stricter when a party commences a proceeding in the Orphans' Court, and afterwards commences one asking for similar relief in a court of equity, from the rule which applies when a party brings an action in a court of general jurisdiction at common law, and afterwards files a bill in relation to the same subject matter in a court of equity. Here equity will not dismiss the bill, but, if he elects to dismiss his proceedings at law, equity will retain the bill, and the discretionary power of the court over the matter of costs is held to be sufficient for the discouragement of needless litigation.

Neither can I see why the rule should be different where an estate is brought into a court of equity by a distributee from the rule which applies when such an estate is brought in by an executor. If an executor appointed by the Orphans' Court, and who has invoked the jurisdiction of that court, perhaps many times, in the course of the settlement of the estate, can come into an equity court at any time before final settlement, as I understand to be his right, and upon showing sufficient special circumstances, transfer the administration of the estate into chancery, I see no reason why a distributee should not have the same right. Of course, after settlement, or final order in the Orphans' Court, the case is different. In regard to certain special matters, such as were involved in the case of Wright vs. Williams, 93 Md., 66; the rule is different. But as a general rule, whenever in the administration of the decedent's estate, a distributee applies to have the whole administration thereof assumed by a court of equity and shows "special circumstances" which enable such court to do fuller and more adequate justice as between parties than the Orphans' Court can do, my opinion is that the chancery court will take jurisdiction upon his request without respect to the situation of the case in the Orphans' Court, provided there has been in that court no final settlement.

In this case, as in the case before cited, of an unnecessary action at law,

434

the control over the costs possessed by the chancery court is deemed a sufficient safeguard against abuse.

I will therefore overrule the demurrer.